PD-0350-15, PD-0351-15, PD-0352-15 & PD-0353-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/4/2015 2:33:03 PM
Accepted 5/4/2015 4:44:09 PM
ABEL ACOSTA
CLERK

**PETITION FOR DISCRETIONARY REVIEW**
OF
NOS. 01-13-00640-CR;
01-13-00641-CR;
01-14-00042-CR;
01-14-00195-CR

**IN THE COURT OF CRIMINAL APPEALS**

---

**DUSTIN WAYNE GLENN**
*Appellant*

v.

**THE STATE OF TEXAS**
*Appellee*

---

On Appeal from Cause Numbers 12CR2237 & 12CR2238
From the 405th District Court of Galveston County, Texas
And Cause Numbers CV-70368 & CV-70369
From County Court at Law No. 3 of Galveston County, Texas

---

**PETITION FOR DISCRETIONARY REVIEW**

---

MAY 4, 2015

FILED IN
COURT OF CRIMINAL APPEALS

May 4, 2015

ABEL ACOSTA, CLERK

**DAVID SUHLER**
P.O. Box 540744
Houston, Texas 77254-0744
(713) 522-1220
drsuhler@davidsuhler.xohost.com
Bar Card No. 19465900
Attorney for Appellant

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT                                    Mr. Dustin Wayne Glenn

PROSECUTOR AT MOTION                         Taniya Henderson
TO ADJUDICATE AND                            600 59th Street
MOTION FOR NEW TRIAL                         Galveston, TX 77551
HEARING

DEFENSE COUNSEL FOR                          Fred Garrett
MISDEMEANOR CHARGES                          1908 Rosharon Rd. #605
                                             Alvin, Texas 77511

DEFENSE COUNSEL AT MOTION                    Tommy James Stickler
TO ADJUDICATE HEARING                        235 W. Sealy St.
                                             Alvin, Texas 77511

DEFENSE COUNSEL AT MOTION                    David Suhler
FOR NEW TRIAL HEARING AND                    P.O. Box 540744
ON APPEAL                                    Houston, Texas 77254

PRESIDING JUDGE                              Honorable Michelle Slaughter
                                             405th Judicial District
                                             Galveston County, Texas

PRESIDING JUDGE                              Honorable Kerri Foley
                                             County Court at Law No. 3
                                             Galveston County, Texas

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .................................................................. 2

TABLE OF CONTENTS ....................................................................................... 3

INDEX OF AUTHORITIES .................................................................................... 4

STATEMENT REGARDING ORAL ARGUMENT ......................................................... 6

STATEMENT OF THE CASE ................................................................................. 6

STATEMENT OF PROCEDURAL HISTORY .............................................................. 6

GROUNDS FOR REVIEW ..................................................................................... 7

STATEMENT OF FACTS ...................................................................................... 8

SUMMARY OF THE ARGUMENT ........................................................................ 10

ARGUMENT .................................................................................................... 12

    GROUND ONE ........................................................................................... 12
    IF THE REASON FOR PLEADING GUILTY WAS COUNSEL'S WRONG ADVICE, IS
    CONFIDENCE IN THE OUTCOME UNDERMINED? ........................................... 12
    GROUND TWO ........................................................................................... 14
    IS ERROR PRESERVED FOR THE LACK OF A PUNISHMENT HEARING WHEN
    MITIGATION EVIDENCE IS PRESENTED AT THE MOTION FOR NEW TRIAL
    HEARING? ................................................................................................ 14
    GROUND THREE ........................................................................................ 17
    HAS THE FIRST COURT OF APPEALS DENIED THE RIGHT FOR IMPARTIAL
    APPELLATE REVIEW BY CLAIMING PREJUDICE CANNOT BE SHOWN WHEN THE
    SAME JUDGE THAT ISSUED A SENTENCE RULES ON THE MOTION FOR NEW
    TRIAL? .................................................................................................... 17

PRAYER FOR RELIEF ....................................................................................... 20

APPENDICES .................................................................................................. 21

# INDEX OF AUTHORITIES

## Cases

*Andrews v. State*, 159 S.W.3d 98 (Tex.Crim.App. 2005)......................................................12

*Arriaga v. State*, 335 S.W.3d 331 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) . 18

*Atkins v. Virginia,* 536 U.S. 304, 122 S. Ct. 2242 (2002) ...................................................18

*Ex Parte Glenn*, No. 01-14-00042, 01-14-00195 (Tex.App.—Houston [1st Dist.] 2015)
......................................................................................................................................10, 12

*Glenn v. State*, No. 01-13-00640-CR, 01-13-00641-CR (Tex.App.—Houston [1st Dist.]
2015)..........................................................................................................................passim

*Goody v. State*, 433 S.W.3d 74 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)...17, 18

*Hardeman v. State*, 981 S.W.2d 773 (Tex. App.—Houston [14th Dist.] 1998, pet.
granted) ................................................................................................................................16

*Issa v. State*, 826 S.W.2d 159 (Tex.Crim.App. 1992) ...................................................10, 14

*Lopez v. State*, --- S.W.3d ---- (Tex.App.—Houston [1st Dist.] 2015)........... 10, 12, 13, 19

*Lopez v. State*, 96 S.W.3d 406 (Tex. App.—Austin 2002, pet. ref'd) ...............................16

*Potts v. State*, No. 14-10-01172-CR, 2012 WL 1380230 (Tex. App.—Houston [14th
Dist.] Apr. 19, 2012, no pet.)............................................................................................18

*Salinas v. State*, 980 S.W.2d 520 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) .. 15

*Shanklin v. State*, 190 S.W.3d 154 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd)
..............................................................................................................................................18

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) ............................10, 12, 13

*Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527 (2003) ........................................................ 19

**Statutes**

Tex. Cod. Crim. Proc. Sec. 44.02 ..............................................................................11, 17

**Other Authorities**

*Mental Illness, Your Client and the Criminal Law: A Handbook for Attorneys Who Represent*

*Persons With Mental Illness*, Texas Appleseed, et. al., 3rd Ed. (October 2005) .............. 19

*N.P. v. Georgia*, No. 2014-CV-241025, Statement of Interest of the United States (Mar.

13, 2015) ...................................................................................................................... 13

Southern Center for Human Rights, *Department of Justice Files Statement of Interest In*

*Cordele Right to Counsel Case*, March 13, 2015, https://www.schr.org/DOJ ............... 13

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

## STATEMENT OF THE CASE

Appellant, Mr. Dustin Glenn, gave a nolo contendere plea to two misdemeanors while on probation. (M.A.J. State's Exhibits 3 & 4; M.N.T. R.R. at 17; C.R. 12CR2237 & 12CR2238 at 8). For the misdemeanors, he received a sentence of fifteen days in county jail and received credit for the twenty-five days he had already served. (M.A.J. State's Exhibits 3 & 4). At that time, Mr. Glenn was serving a five year term of community supervision for two Aggravated Assault offenses. (M.N.T. R.R. at 17; C.R. 12CR2237 & 12CR2238 at 8). The State filed motions to adjudicate in the 405th District Court that same afternoon. At his motion to adjudicate hearing, Mr. Glenn pleaded "not true" to each violation. (M.A.J. R.R. at 7-13). Without a separate punishment hearing, the court found that Mr. Glenn had violated each of the allegations in the motions to adjudicate and then sentenced Mr. Glenn to twelve years in prison. (M.A.J. C.R. 12CR2237 at 30, 12CR2238 at 34). Mr. Glenn filed a motion for new trial, which was denied at a hearing. (M.A.J. C.R. 12CR2237 at 44, 48; 12CR2238 at 48).

## STATEMENT OF PROCEDURAL HISTORY

Mr. Glenn pled nolo contendere to the two misdemeanor charges on January 24, 2013. (M.A.J. State's Exhibits 3 & 4). On July 24, 2013, Mr. Glenn filed Writs of

Habeas Corpus for the misdemeanor charges, which were denied. (See Findings and Order Cause No. CV-70368, CV-70369). On January 8, 2014, Mr. Glenn filed a notice of appeal to the first court of appeals for the denial of these writs. Briefs were filed and an opinion was handed down on February 26, 2015. (See Appendix A). No motion for rehearing was filed.

For the felony charges, Mr. Glenn timely filed his notice of appeal on July 2, 2013. (M.A.J. C.R. 12CR2237 at 38, 12CR2238 at 42). Briefs were filed and an opinion was handed down on February 26, 2015. (See Appendix B). No motion for rehearing was filed. Mr. Glenn now files this petition for discretionary review.

## GROUNDS FOR REVIEW

### GROUND ONE

**IF THE REASON FOR PLEADING GUILTY WAS COUNSEL'S WRONG ADVICE, IS CONFIDENCE IN THE OUTCOME UNDERMINED?**

### GROUND TWO

**IS ERROR PRESERVED FOR THE LACK OF A PUNISHMENT HEARING WHEN MITIGATION EVIDENCE IS PRESENTED AT THE MOTION FOR NEW TRIAL HEARING?**

### GROUND THREE

**HAS THE FIRST COURT OF APPEALS DENIED THE RIGHT FOR IMPARTIAL APPELLATE REVIEW BY CLAIMING PREJUDICE CANNOT BE SHOWN WHEN THE SAME JUDGE THAT ISSUED A SENTENCE RULES ON THE MOTION FOR NEW TRIAL?**

## STATEMENT OF FACTS

Mr. Glenn has a long history of mental health issues. (See R.R. Exhibits to the Motion for New Trial – defendant medical records). Mr. Glenn's jail docket counsel saw him for a brief period before facilitating a guilty plea on the first appearance. (M.N.T. R.R. at 17). Trial counsel told Mr. Glenn he could go home that night even though he was on felony probation. (M.N.T. R.R. at 18-20, 63-64, M.A.J. R.R. at 58). Mr. Glenn stated the reason he pled guilty to the misdemeanor charges against him was because he was told he could go home if he pled guilty. (M.N.T. R.R. at 63). He had innocence claims to the misdemeanor charges. (M.N.T. R.R. at 61-63). The trespassing charge was given to him while at his sister's house, where he was living at that time, had always been allowed there, and known his whole life. (M.N.T. R.R. at 62). His belongings were there and he received mail there. (M.N.T. R.R. at 63). The resisting arrest charge was given because officers had to wake him up as he was asleep. (M.N.T. R.R. at 62).

When Mr. Glenn was adjudicated guilty of his felony charges, he was not given a separate punishment hearing after the finding of guilt. (M.A.J. R.R. at 83-87). He made the trial court aware of the specific punishment mitigation evidence he would have presented at the motion for new trial hearing. (Exhibits to the M.N.T. R.R. Vol. 1-3). He attempted to admit evidence at his adjudication hearing, but was denied the opportunity to do so. (M.A.J. R.R. at 83-87) (Mr. Glenn's mother was disallowed from testifying to extensive mental health issues). He attempted to admit evidence of

8

medical records at the motion for new trial hearing, but was denied in part to do so. (M.N.T. R.R. at 12-15).

Mr. Glenn was limited in his presentation of his long history of mental health issues to only his own testimony at the motion for new trial hearing. His testimony included evidence of his mother using crack while pregnant with him. (M.N.T. R.R. at 67). He attended alternative learning school. (M.N.T. R.R. at 60). He has been diagnosed with at least ADHD, bipolar, dyslexia, depression, and oppositional disruptive disorder. (M.N.T. R.R. at 65-66). He has been hospitalized in a mental institution. (M.N.T. R.R. at 67). Even in the motion for new trial hearing, Mr. Glenn blurted out irrelevant statements.[1] (M.N.T. R.R. at 59). The court denied much of his punishment mitigation evidence on multiple occasions in his proceedings. (M.A.J. R.R. at 83-87; M.N.T. R.R. at 12-15).

---

[1] Stating "I just found out it was my mom's birthday last week" with no question or comments related to that statement.

## SUMMARY OF THE ARGUMENT

The first court of appeals ruled that prejudice did not exist because appellant issued no evidence that showed he would have insisted on going to trial but for his counsel's wrong advice. *Ex Parte Glenn*, No. 01-14-00042, 01-14-00195, 7-8 (Tex.App.—Houston [1st Dist.] 2015). This is the wrong standard to apply for the prejudice prong of the *Strickland* test, and the first court of appeals is issuing conflicting opinions regarding this standard. *See Lopez v. State*, --- S.W.3d ---- (Tex.App.—Houston [1st Dist.] 2015); *Ex Parte Glenn*, No. 01-14-00042, 01-14-00195 (Tex.App.—Houston [1st Dist.] 2015). Further, Mr. Glenn did show evidence that he would not have pled guilty. (M.N.T. R.R. at 18-20, 63-64, M.A.J. R.R. at 58).

This court should recognize that Mr. Glenn did present evidence that his plea was based on wrong advice, showing prejudice. This court should also clarify the conflicting standards used by the first court of appeals.

Mr. Glenn had specific punishment mitigation evidence that he wanted to present to the court, and rightfully articulated that specific evidence at his motion for new trial hearing. (Exhibits to the M.N.T. R.R. Vol. 1-3). Evidence presented at the hearing, as well as a defendant's paper motions should be used to determine preservation of error. Mr. Glenn was never given the opportunity to present his evidence and was entitled to have a separate punishment hearing. *Issa v. State*, 826 S.W.2d 159, 161 (Tex.Crim.App. 1992). He was denied his right to that hearing. (M.A.J. R.R. at 83-87). The cases used by the first court of appeals in their opinion are

10

not controlling in this case. This court should remand this case for adequate appellate review on whether Mr. Glenn was entitled to a punishment hearing, as error was preserved.

Defendants are entitled to a fair and impartial appellate review of their claims. *See* Tex. Cod. Crim. Proc. Sec. 44.02. The first court of appeals decision in this case states that anytime the same judge presides over sentencing and over a motion for new trial, prejudice cannot be shown for the grounds in the motion for new trial. *Glenn v. State*, No. 01-13-00640-CR, 01-13-00641-CR, 11-12 (Tex.App.—Houston [1st Dist.] 2015). This eliminates any chance for reasonable appellate review of these claims. This court should remand this case to afford Mr. Glenn appellate review of his ineffective assistance of counsel claims regarding his mental health evidence issues.

## ARGUMENT

## GROUND ONE

### IF THE REASON FOR PLEADING GUILTY WAS COUNSEL'S WRONG ADVICE, IS CONFIDENCE IN THE OUTCOME UNDERMINED?

Mr. Glenn established prejudice in his misdemeanor case by stating the reason he pled guilty was his counsel's advice that he could go home if he pled guilty. The prejudice prong of ineffective assistance of counsel claims is established if the probability that the outcome would have been different is "sufficient to undermine confidence in the outcome" of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984); *Andrews v. State*, 159 S.W.3d 98, 102 (Tex.Crim.App. 2005); *Lopez v. State*, --- S.W.3d ----, 7 (Tex.App.—Houston [1st Dist.] 2015).

In its opinion affirming the denial of Mr. Glenn's writs of habeas corpus for his misdemeanor charges, the first court of appeals determined that the prejudice prong in the *Strickland* test was not met because "appellant has presented no evidence that ... [he] would have insisted on proceeding to trial in both misdemeanor cases." *Ex Parte Glenn*, No. 01-14-00042, 01-14-00195, 7-8 (Tex.App.—Houston [1st Dist.] 2015). However, Mr. Glenn did present evidence that he would have requested trial. He stated the reason he pled guilty was because his counsel told him he could go home, indicating if he was not told that, he would not have pled guilty. (M.N.T. R.R. at 18-20, 63-64, M.A.J. R.R. at 58). His statements are evidence that he would not have pled

12

guilty that day and in all likelihood, would have insisted on a trial to prove his innocence.

The first court of appeals decision in this case seems to apply a different standard than the decision in *Lopez*, which was issued on the same day as this case. (See Appendix C). This court should provide the appellate court guidance in its application of this test.

Further, the first prong of the *Strickland* test was met in this case. In Galveston County, the jail docket has defense counsel encourage pleas on the first setting. (M.N.T. R.R. at 17). Mr. Glenn had innocence claims and a history of mental health issues. (M.N.T. R.R. at 61-63, 65-69). The jail docket representation of the mentally challenged in Galveston County is similar to the juvenile representation in the Cordele Judicial Circuit, where the Dept. of Justice issued a statement of interest regarding fair representation. *N.P. v. Georgia*, No. 2014-CV-241025, Statement of Interest of the United States (Mar. 13, 2015). "There is no way that any lawyer, even an experienced juvenile lawyer, could meet with a child, interview the child, investigate the case, determine the legal and factual issue, assess the case and provide a child with informed, professional advice about how to resolve the case in 15 minutes". Southern Center for Human Rights, *Department of Justice Files Statement of Interest In Cordele Right to Counsel Case*, March 13, 2015, https://www.schr.org/DOJ. The mentally challenged in Galveston receive, at best, token representation, but in reality, they simply are not represented.

13

This court should find that the prejudice test was met because but for his trial counsel's wrong advice, Mr. Glenn would not have pled guilty. This court should remand this case for a finding that counsel was ineffective.

## GROUND TWO

### IS ERROR PRESERVED FOR THE LACK OF A PUNISHMENT HEARING WHEN MITIGATION EVIDENCE IS PRESENTED AT THE MOTION FOR NEW TRIAL HEARING?

Mr. Glenn presented punishment mitigation evidence through his mother's testimony and hundreds of pages of mental health medical history, thereby preserving error for appellate review.

> "Today we hold that when a trial court finds that an accused has committed a violation as alleged by the State and adjudicates a previously deferred finding of guilt, the court must then conduct a second phase to determine punishment.... Thus, based upon the statute, the defendant is *entitled* to a punishment hearing after the adjudication of guilt, ..." *Issa v. State*, 826 S.W.2d 159, 161 (Tex.Crim.App. 1992).

The first court of appeals ruled Mr. Glenn did not preserve error because "appellant, in the motions [for new trial], did not apprise the trial court of any additional evidence that appellant would have offered." *Glenn v. State*, No. 01-13-00640-CR, 01-13-00641-CR, 18 (Tex.App.—Houston [1st Dist.] 2015). However, Mr. Glenn did inform the trial court of the evidence it would have presented. Earlier in its own opinion, the first court of appeals even admitted this evidence was presented at the motion for new trial hearing. "At the hearings on appellant's motions for new

14

trial, he offered into evidence hundreds of pages of his medical records." *Glenn*, No. 01-13-00640-CR, 01-13-00641-CR at 11.

It seems the court of appeals is indicating that since the paper motion for new trial did not state the specific evidence the defense would present, then error was not preserved. However, the trial court was made aware of the evidence at the hearing. (Exhibits to the M.N.T. R.R. Vol. 1-3). In its own opinion, the first court of appeals contradicts itself by failing to recognize the specific evidence to be presented for punishment mitigation, which should have been heard at a separate punishment hearing. Since the trial court was aware of the specific evidence to be presented at the time of the hearing on the motion for new trial, Mr. Glenn preserved error for this issue. Therefore, this court should remand this case for a proper appellate analysis of this issue as error was preserved.

The cases cited by the first court of appeals for this issue do not actually support their claims. The first case ruled error was not preserved because the defendant was allowed a full hearing related to punishment before the adjudication of his guilt and he never articulated additional evidence, at a hearing or otherwise. *Salinas v. State*, 980 S.W.2d 520, 521 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). The next case involved a defendant who was given a full opportunity to present punishment mitigation evidence: first, at the adjudication hearing, and then through a motion for new trial hearing. The defendant in this case never articulated additional evidence, either. *Lopez v. State*, 96 S.W.3d 406, 415-16 (Tex. App.—Austin 2002, pet.

15

ref'd). In the third cited case, again, the defendant was given a full opportunity to present punishment mitigation evidence before sentencing, and never articulated any additional evidence. *Hardeman v. State*, 981 S.W.2d 773, 775 (Tex. App.—Houston [14th Dist.] 1998, pet. granted).[2]

Unlike these cases, Mr. Glenn did articulate the additional punishment mitigation evidence he desired to present at the motion for new trial hearing, but was denied the opportunity to do so. (M.N.T. R.R. at 12-15) (medical records summary denied). Further, he was never afforded an opportunity to offer this punishment mitigation evidence earlier in any proceedings and was denied the right to present other such evidence. (M.A.J. R.R. at 83-87) (Mr. Glenn's mother was disallowed from testifying to extensive mental health issues). Finally, all three of the cited cases are from other court of appeals and are not binding law on this court or on the first court of appeals.

---

[2] The opinion in *Hardeman* tries to quote the standard from *Issa* as "[f]ollowing a finding of guilt in a motion to adjudicate, the defendant is entitled to offer evidence in mitigation of punishment *if such evidence has not already been elicited during the proceedings. See Issa v. State,* 826 S.W.2d 159, 161 (Tex.Crim.App.1992) (emphasis added)." *Hardeman v. State*, 981 S.W.2d at 775. Multiple problems exist here. First, the emphasized words were never in the ruling of *Issa*. *Hardeman* misstates the *Issa* standard completely. Even if these words were in the ruling, however, the standard from *Issa* would still not be that a separate punishment hearing shall be afforded to the defendant only if NO punishment evidence is presented. The standard is if the specific evidence articulated to be presented was afforded an opportunity to be presented. The words 'if such evidence' used by the court in *Hardeman* would refer to specific evidence a defendant is trying to present. In this case, such evidence is the extensive mental health medical history records and further testimony of the defendant's mother, which were articulated to the court as desired to be presented, but were denied and never given an opportunity to be presented.

This court should find that error was preserved and remand this case to allow Mr. Glenn his rightful separate punishment hearing.

## GROUND THREE

### HAS THE FIRST COURT OF APPEALS DENIED THE RIGHT FOR IMPARTIAL APPELLATE REVIEW BY CLAIMING PREJUDICE CANNOT BE SHOWN WHEN THE SAME JUDGE THAT ISSUED A SENTENCE RULES ON THE MOTION FOR NEW TRIAL?

The first court of appeals has ruled in multiple cases that if the same trial judge presided over both the sentence or adjudication of guilt and the motion for new trial, prejudice cannot be established. *Glenn*, No. 01-13-00640-CR, 01-13-00641-CR at 11-12; *Goody v. State*, 433 S.W.3d 74, 81 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). In doing so, defendants' right for reasonable and impartial appellate review is denied. *See* Tex. Cod. Crim. Proc. Sec. 44.02.

Defendants have a right to appeal their convictions. Tex. Cod. Crim. Proc. Sec. 44.02. In this case, the first court of appeals reasoning allows trial judges to cut off the appellate review process for any ineffective assistance of counsel claims in a motion for new trial. If a trial judge does not want their opinion reviewed, they can just be sure to preside over both sentencing and the motions for new trial. It will be shown that their opinion on punishment will not be affected by the new evidence in a motion for new trial. This way, **any** time a defendant challenges the denial of ineffective assistance of counsel claims, the appellate court will be forced to not review for lack of prejudice.

17

The fourteenth court of appeals has also followed this reasoning. *Potts v. State*, No. 14-10-01172-CR, 2012 WL 1380230, at *1 (Tex. App.—Houston [14th Dist.] Apr. 19, 2012, no pet.) (mem. op., not designated for publication); *Arriaga v. State*, 335 S.W.3d 331, 337 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

This reasoning should not stand, and this court needs to address this issue. The ruling that prejudice cannot be shown merely because the same judge presided over both proceedings is wrong. This court should provide Houston defendants with their rights to proper analysis of ineffective assistance of counsel claims and remand this case back to the first court of appeals to complete its appellate review.

This line of reasoning can also prevent legitimate ineffective assistance of counsel claims being analyzed, as in this case. Mr. Glenn received ineffective assistance of counsel at his motion to adjudicate guilt hearing because his mental health history evidence was not presented. "[A] failure to uncover and present mitigating evidence cannot be justified when counsel has not conducted a thorough investigation of the defendant's background. *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd); *see also Goody*, 433 9 S.W.3d at 81 ("Counsel's representation is ineffective . . . if counsel failed to conduct an adequate investigation.")." *Glenn*, No. 01-13-00640-CR, 01-13-00641-CR at 8-9.

Mitigation evidence is especially important when the defendant is mentally challenged. "As the United States Supreme Court stated in *Atkins v. Virginia,* 536 U.S. 304, 320-21, 122 S. Ct. 2242, 2252 (2002), severely mentally deficient defendants 'may

18

be less able to give meaningful assistance to their counsel and are typically poor witnesses, and their demeanor may create an unwarranted impression of lack of remorse for their crimes.'" *Lopez v. State*, --- S.W.3d ----, 14-15 (Tex.App.—Houston [1st Dist.] 2015). Mental health issues should make counsel aware that further investigation was needed to uncover mitigating evidence. *Wiggins v. Smith*, 539 U.S. 510, 527–28, 123 S. Ct. 2527, 2541–42 (2003). Mr. Glenn's counsel owed him his right to effective counsel of the mentally challenged, and at the least, he deserves appellate review of his claim.

The presumption that a judge would possibly not consider mental health mitigation evidence in his punishment sentence is poor policy as well.

> Incarceration is particularly harmful to people with mental illness: Jails can be very damaging to the stability, mental health, and physical health of individuals with mental illness. Numerous studies show that placing mentally ill persons in single cells, isolation, or "lock down" can worsen their schizophrenia, depression, and anxiety. Mentally ill and mentally retarded adults are also more likely than others to be victimized by other inmates or jail staff. They are at high risk for suicide. They generally get inadequate, if any, medication and treatment while in jail. *Mental Illness, Your Client and the Criminal Law: A Handbook for Attorneys Who Represent Persons With Mental Illness*, Texas Appleseed, et. al., 3rd Ed. (October 2005).

By applying the reasoning that prejudice does not exist if the same judge presides over sentencing and motion for new trial, the first court of appeals has denied defendants the right for appellate review. This court should remand this case to correct this reasoning.

19

## PRAYER FOR RELIEF

For the foregoing reasons, we respectfully request this court to remand this case back to the first court of appeals to recognize evidence of prejudice for Mr. Glenn's misdemeanor pleas. Further, we respectfully request this court to remand this case with instructions that error was preserved for Mr. Glenn's lack of a punishment hearing. Further, we respectfully request this court to remand this case with instructions that prejudice can be found even if the same judge presides over punishment and a motion for new trial hearing, as currently, the appellate court is denying impartial appellate review.

Respectfully submitted,

David Suhler_____
**DAVID SUHLER**
Attorney for Appellant
State Bar No. 19465900
P.O. Box 540744
Houston, Texas 77254-0744
713-522-1220

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that a copy of Appellant's Brief was electronically emailed to the Appellate Division of the Galveston County District Attorney's office on the 4th day of May, 2015. This petition for discretionary review complies with Texas Rule of Appellate Procedure 9.4(i)(3) and contains 4,231 words.

David Suhler_____

# APPENDICES

# APPENDIX A



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-14-00042-CR**
**NO. 01-14-00195-CR**

————————————

**EX PARTE DUSTIN WAYNE GLENN**

---

**On Appeal from the County Court at Law No. 3**
**Galveston County, Texas**
**Trial Court Case Nos. CV-70368, CV-70369**

---

**MEMORANDUM OPINION**

Appellant, Dustin Wayne Glenn, challenges the trial court's orders denying

his applications for writs of habeas corpus.[1]  In his sole issue, appellant contends

---

[1]    *See* TEX. CODE CRIM. PROC. ANN. art. 11.09 (Vernon 2005) (providing person
confined or restrained from conviction of misdemeanor offense may apply for writ

that the trial court erred in denying him relief from two judgments of conviction for the misdemeanor offenses of criminal trespass[2] and resisting arrest[3] on his asserted ground that he had received ineffective assistance of counsel in both cases.

We affirm.

## Background

On October 22, 2012, after appellant pleaded guilty to two separate felony offenses of aggravated assault with a deadly weapon,[4] the 405th District Court of Galveston County deferred adjudication of his guilt and placed him on community supervision for five years.

On January 24, 2013, appellant, while on community supervision, pleaded nolo contendere in the trial court to the misdemeanor offenses of criminal trespass and resisting arrest. In his plea papers, appellant acknowledged that his counsel, appointed to defend him in the trial court, had "fully discussed" his cases with him. Also, appellant understood that because he was on community supervision, "[his] plea[s] of guilty or nolo contendere [could] result in the revocation of [his]

---

of habeas corpus); *see also State v. Collazo*, 264 S.W.3d 121, 126 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (same).

[2] *See* TEX. PENAL CODE ANN. § 30.05 (Vernon Supp. 2014); appellate cause number 01-14-00195-CR; trial court cause number CV-70369.

[3] *See* TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2011); appellate cause number 01-14-00042-CR; trial court cause number CV-70368.

[4] *See* TEX. PENAL CODE ANN. § 22.02 (Vernon 2011); appellate cause numbers 01-13-00640-CR & 01-13-00641-CR; trial court cause numbers 12CR2237 and 12CR2238.

2

community supervision or parole resulting in [his] further confinement." Appellant's counsel also signed the plea papers, affirming that he had "fully explained all of the matters contained in [the papers] to appellant."

Prior to accepting appellant's pleas, the trial court admonished appellant of the consequences of his pleas. It then accepted appellant's pleas, found him guilty of each offense, and sentenced him to confinement for fifteen days in each case, with the sentences to run concurrently.

Appellant subsequently filed his post-conviction applications for writs of habeas corpus, arguing that he entered his pleas involuntarily because he "did not receive accurate advice [regarding] the effect of [his pleas]" on his community supervision. According to appellant, his counsel in the trial court, "knowing that [appellant] was on felony probation, advised [him] that [he] could get out of jail [following his pleas] and confer personally with [his] felony probation officer in order to minimize the effect of his conviction[s] [for criminal trespass and resisting arrest] on [his] probation." However, appellant was not released from confinement after pleading guilty, and the State moved to adjudicate his guilt on the two felony offenses of aggravated assault with a deadly weapon. As grounds for adjudication, the State alleged, among other grounds, that appellant's commission of the offenses of criminal trespass and resisting arrest violated the conditions of his community supervision. The 405th District Court adjudicated appellant's guilt and

sentenced him to confinement for twelve years for each offense of aggravated assault with a deadly weapon, with the sentences to run concurrently.

In his unsworn declaration, attached to his applications for writs of habeas corpus, appellant explained:

> I first met [my counsel in the trial court] when I was brought in for the misdemeanor jail docket for resisting arrest and criminal trespassing charges. I had never met him before. . . . [Counsel] spent twenty to thirty minutes with me. He asked me for an explanation for the[] charges and I told him that I was not guilty. I was not trespassing at my sister's place of residence because I had been living there for at least three weeks when the police came. I told. . . . [counsel] that all my property was at my sister's and I received my mail: bills and bank statements, there. . . . I explained to . . . [counsel] that I was intoxicated the night that the police came for me, I had fallen asleep and I woke up being roughly handcuffed by the police. I explained to . . . [counsel] that I did not fight or resist the police, but merely asked for an explanation of what was going on and why I was being arrested.

> . . . [Counsel] explained to me that, if I plead guilty to the misdemeanor offenses, I could get out of jail, . . . go see my probation officer and explain to [him] what had happened to me. . . . [counsel] knew I was on felony probation because I told him about it and he told me that he had my paperwork with him. I relied on . . . [counsel] telling me that I would get out of jail if I plead guilty, but, if I didn't plead guilty, then I would be in jail for a long time. . . .

> But I did not get out of jail that day . . . . Later that day, . . . [t]he sergeant told me that "they" had violated my probation that same day and put a $120,000 bond on me. . . .

> A week or two later, I received a copy of the motion to get me off probation. . . . I learned that two of the things that "they" were violating me for were the misdemeanor charges that I told . . . [counsel] that I did not do.

4

The trial court denied appellant's applications.

## Standard of Review

An applicant for a writ of habeas corpus bears the burden of proving his allegations by a preponderance of the evidence. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). We view the evidence in the light most favorable to the trial court's ruling, and we afford almost total deference to the court's determination of historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006); *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We afford the same amount of deference to the trial court's rulings on "application of law to fact questions" that involve an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d at 819. In such instances, we use an abuse of discretion standard. *See Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011). However, if resolution of those ultimate questions turns on an application of legal standards, we review those determinations de novo. *Ex parte Peterson*, 117 S.W.3d at 819. We will affirm the trial court's decision if it is correct on any theory of law applicable to the case. *Ex parte Primrose*, 950 S.W.2d 775, 778 (Tex. App.—Fort Worth 1997, pet. ref'd).

## Ineffective Assistance of Counsel

In his sole issue, appellant argues that he entered his pleas of nolo contendere in both misdemeanor cases involuntarily because he received ineffective assistance of counsel.

To be valid, a plea must be entered voluntarily, knowingly, and intelligently. TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon Supp. 2014); *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008); *Ex parte Karlson*, 282 S.W.3d 118, 128–29 (Tex. App.—Fort Worth 2009, pet. ref'd). A plea is not voluntarily and knowingly entered if it is made as a result of ineffective assistance of counsel. *Ulloa v. State*, 370 S.W.3d 766, 771 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

We apply the two-pronged test of *Strickland v. Washington* to challenges to pleas premised on ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984)). Under S*trickland*, in order to establish ineffective assistance of counsel, a defendant must show (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068; *see also Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Any

6

allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). The "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

In the context of pleas, the focus of the prejudice inquiry is "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S. Ct. at 370. Therefore, in order to satisfy *Strickland*'s prejudice prong, when a defendant has pleaded guilty or nolo contendere, he "must show that there is a reasonable probability that, but for counsel's errors, he *would not have pleaded guilty* and *would have insisted on going to trial*." *Hill*, 474 U.S. at 59, 106 S. Ct. at 370 (emphasis added); *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).

Here, although appellant asserts in his unsworn declaration that he "relied on" counsel's advice, appellant has presented no evidence that, but for his counsel's deficient performance, he would not have pleaded nolo contendere and

7

would have insisted on proceeding to trial in both misdemeanor cases. Notably, appellant did not include in his unsworn declaration such an assertion. Moreover, appellant did not allege in his applications for writs of habeas corpus that he would have proceeded to trial.

Without evidence in the record that appellant would have insisted on proceeding to trial, he cannot establish the second prong of the *Strickland* test. *See Johnson v. State*, 169 S.W.3d 223, 232 (Tex. Crim. App. 2005) ("'If the defendant cannot demonstrate that but for his counsel's deficient performance, he would have [availed himself of trial], counsel's deficient performance has not deprived him of anything, and he is not entitled to relief.'") (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484, 120 S. Ct. 1029, 1038 (2000)); *see, e.g.*, *Kliebert v. State*, Nos. 01-12-00757-CR, 01-12-00758-CR, 01-12-00759-CR, 01-12-00760-CR, 2013 WL 3811491, at *3 (Tex. App.—Houston [1st Dist.] July 18, 2013, pet. ref'd) (mem. op., not designated for publication) (holding defendant failed to establish prejudice where he "presented no evidence, either by testimony or affidavit, that, but for counsel's alleged deficiency, he would not have pleaded guilty"). Accordingly, we hold that the trial court did not abuse its discretion in denying appellant habeas relief.

We overrule appellant's sole issue.

## Conclusion

8

We affirm the trial court's orders denying appellant habeas corpus relief.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Do not publish.   TEX. R. APP. P. 47.2(b).



**APPENDIX B**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-13-00640-CR**
**NO. 01-13-00641-CR**

————————————

**DUSTIN WAYNE GLENN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 12CR2237, 12CR2238**

## MEMORANDUM OPINION

After appellant, Dustin Wayne Glenn, with agreed punishment recommendations from the State, pleaded guilty to two separate offenses of

aggravated assault with a deadly weapon,[1] the trial court deferred adjudication of his guilt and placed him on community supervision for five years. The State, alleging several violations of the conditions of his community supervision, subsequently moved to adjudicate appellant's guilt on both offenses. After a hearing, the trial court found appellant guilty and assessed his punishment at confinement for twelve years for each offense, with the sentences to run concurrently. In five issues, appellant contends that he received ineffective assistance of counsel and the trial court erred in excluding relevant punishment evidence and not conducting a separate punishment hearing after the adjudication of his guilt.

We affirm.

**Background**

In its motions to adjudicate appellant's guilt, in regard to the first offense,[2] the State alleged that he violated the conditions of his community supervision by committing the misdemeanor offenses of criminal trespass and resisting arrest, failing to perform community service, failing to enroll in a domestic violence and/or anger control program, failing to reimburse Galveston County for the attorney's fees of his court appointed counsel, and failing to pay a community

---

[1]      *See* TEX. PENAL CODE ANN. § 22.02 (Vernon 2011).

[2]      Appellate cause number 01-13-00640-CR; trial court cause number 12CR2237.

2

supervision fee, a Crime Stoppers Program payment, and his court costs. In its motion to adjudicate appellant's guilt, in regard to the second offense,[3] the State alleged that he violated the conditions of his community supervision by committing the above offenses, failing to perform community service, failing to enroll in a domestic violence and/or anger control program, and failing to pay a Crime Stoppers Program payment and his court costs. Appellant pleaded "not true" to all of the allegations in both of the State's motions.

At the hearing on the State's motions, Jeff Fox, appellant's community supervision officer, testified that he reviewed the conditions of appellant's community supervision in the instant causes with appellant. And appellant signed two forms and orally affirmed that he understood the conditions of his community supervision. On January 24, 2013, appellant pleaded no contest to the misdemeanor offenses of criminal trespass and resisting arrest, thereby violating the conditions of his community supervision not to commit any new offenses. Appellant also failed to pay a $60.00 per month community supervision fee, his Crime Stoppers Program payments, and his court costs. He also failed to reimburse Galveston County for the attorney's fees of his court appointed counsel. And appellant did not perform his community service or enroll in a domestic violence and/or anger control program.

---

[3] Appellate cause number 01-13-00641-CR; trial court cause number 12CR2238.

3

Appellant testified that although he pleaded nolo contendere in the county court to the misdemeanor offenses of criminal trespass and resisting arrest, he did so only because his counsel told him that if he did so, he could "get out," "go home," and "talk to his probation officer." Appellant explained that he did not attend or enroll in a domestic violence and/or anger control program because he did not have a car and "didn't know where to go." He also did not complete any community service hours, although he was aware that he was required to complete sixteen hours per month. Appellant also conceded that he did not pay his Crime Stoppers Program payments, his monthly community supervision fee, and his court costs. And he did not reimburse Galveston County for the attorney's fees of his appointed counsel. And he admitted that he could have used money that he spent on cigarettes to pay his fees. Moreover, he knew that it was his responsibility to comply with the conditions of his community supervision.

Appellant explained, however, that his ability to read and write is lower than a "second grade level," he suffers from depression, and, as a child, he had mental health issues, including "ADHD, bipolar [disorder], [and] dyslexi[a]." Doctors prescribed medication for these conditions, and he was "on 17 different medications before [he] was 12 years old." And appellant, at the time of the hearing, was on medication for depression, which made him feel "a lot happier" and like he does not "want to hurt [himself]."

4

Appellant's mother, Margaret Watson, testified that he had mental health issues while "growing up," is "bipolar," and was committed to "the psychiatric ward" for five days following his commission of the instant offenses. And she noted that when appellant is on his medication, he is "a happy person"; but when he is not, "[i]t's like the devil's taken over."

After the hearing, the trial court found all of the allegations in the State's motion to adjudicate to be true, found appellant guilty of the instant offenses, and assessed his punishment at confinement for twelve years for each offense, with the sentences to run concurrently.

Appellant subsequently filed motions for new trial, arguing that he was "not allowed to present evidence on the important status of [his] abnormal, deteriorated and deteriorating mental status," he was "entitled to a punishment hearing after the adjudication of guilt," and he received ineffective assistance of counsel. After a hearing, the trial court denied appellant's motions.

**Ineffective Assistance of Counsel**

In his fifth issue, appellant argues that his counsel, appointed to represent him at his adjudication hearing, provided ineffective assistance because counsel "failed to adequately investigate [his] mental health history."

Because appellant presented his ineffective assistance of counsel claim to the trial court in motions for new trial and received a hearing on his motions, we

5

address his issue as a challenge to the trial court's denial of his motions, and we review the trial court's denial for an abuse of discretion. *Biagas v. State*, 177 S.W.3d 161, 170 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). We view the evidence in the light most favorable to the trial court's rulings and uphold the trial court's ruling if they were within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decisions were arbitrary or unreasonable. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Biagas*, 177 S.W.3d at 170. If there are two permissible views of the evidence, the trial court's choice between them cannot be held to be clearly erroneous. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Webb*, 232 S.W.3d at 112.

We note that trial courts are in the best position to "evaluate the credibility" of witnesses and to resolve conflicts in evidence. *See Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). And a trial court may choose to believe or disbelieve all or any part of the witnesses' testimony. *See id.* When, as here, a trial court makes no findings of fact regarding the denial of a motion for new trial, we should "impute implicit factual findings that support the trial judge's ultimate

ruling on that motion when such implicit factual findings are both reasonable and supported in the record." *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005); *Escobar v. State*, 227 S.W.3d 123, 127 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

To prove his claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). Appellant has the burden of establishing both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). And his "failure to satisfy one prong of the *Strickland* test negates" our "need to

7

consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

In considering whether trial counsel conducted an adequate investigation for potential mitigating evidence, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence was reasonable. *Wiggins v. Smith*, 539 U.S. 510, 523, 123 S. Ct. 2527, 2536 (2003); *Goody v. State*, 433 S.W.3d 74, 80 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). "While '*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence,' 'counsel can . . . make a reasonable decision to forego presentation of mitigating evidence [only] after evaluating available testimony and determining that it would not be helpful.'" *Goody*, 433 S.W.3d at 80–81 (quoting *Wiggins*, 539 U.S. at 533, 123 S. Ct. at 2537). An attorney's decision not to investigate or to limit the scope of the investigation is given a "heavy measure of deference" and assessed in light of all circumstances to determine whether reasonable professional judgment would support the decision. *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. However, a failure to uncover and present mitigating evidence cannot be justified when counsel has not conducted a thorough investigation of the defendant's background. *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd); *see also Goody*, 433

8

S.W.3d at 81 ("Counsel's representation is ineffective . . . if counsel failed to conduct an adequate investigation.").

In addition to establishing a deficiency in counsel's performance, appellant must show that a reasonable probability exists that a fact-finder's assessment of his punishment would have been less severe in the absence of counsel's deficient performance. *Bazan v. State*, 403 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Rivera v. State*, 123 S.W.3d 21, 32 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Our prejudice analysis turns on whether counsel's deficiency made any difference to the outcome of the case. *Riley*, 378 S.W.3d at 458. It is not enough to show that trial counsel's errors had some "conceivable" effect on the outcome of the punishment assessed; the likelihood of a different result must be "substantial." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 787, 792 (2011); *see also Goody*, 433 S.W.3d at 81. An appellate court will not reverse a conviction for ineffective assistance of counsel at the punishment phase of trial unless the defendant shows prejudice as a result of deficient attorney performance. *Wiggins*, 539 U.S. at 534, 123 S. Ct. at 2542; *Rivera*, 123 S.W.3d at 32. In reviewing whether an appellant has satisfied this showing, we accord "almost total deference to a trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor." *Riley*, 378 S.W.3d at 458. Further, when the trial judge presiding over a motion for new trial is the same

judge that presided over the trial, we presume that the judge knew how evidence admitted at the hearing on the motion for new trial could have affected the judge's ruling on punishment. *Smith v. State*, 286 S.W.3d 333, 344–45 (Tex. Crim. App. 2009); *Goody*, 433 S.W.3d at 81. Because application of this second prong of the *Strickland* analysis is dispositive of appellant's fifth issue, we begin here.

Appellant argues that counsel's failure to request appellant's medical records "for use in the punishment phase" of the adjudication hearings prejudiced him because "a reasonable probability exists that the court would have . . . issued a lighter sentence." He asserts that his medical records "demonstrate" that [his] "mother may have abused substances while she was pregnant with [him]" and, even if not, she and [his] father "abused substances during his childhood." Appellant further asserts that his "history of hospitalization for mental health issues strongly demonstrates that his condition requires consistent attention to the mental health problems he was born with." Thus, if his counsel "had offered these medical records" at the adjudication hearings, "the court would have had information beyond the testimony of [appellant] about his mental health issues as a child," and the records "would have provided support" for [his] argument that "mental health hospitalization or a lesser sentence was the proper and just result for punishment."

We note that the same judge who presided over appellant's adjudication hearings also presided over appellant's motions for new trial. At the hearings on appellant's motions for new trial, he offered into evidence hundreds of pages of his medical records. He asserts that his counsel should have discovered and presented the documents to the trial court at his adjudication hearings.

Here, "[w]e presume from the trial court's denial of [appellant's] motion[s] [for new trial] that the [medical records], even if discovered [by counsel and presented at the adjudication hearing], would not have affected [the trial court's] decision on sentencing." *Goody*, 433 S.W.3d at 81; *see also Smith*, 286 S.W.3d at 345 ("[W]e presume that [the trial court] knew . . . what the appellant's testimony . . . would be, and that, even assuming any such testimony to be accurate and reliable, knew that it would not have influenced his" punishment determination); *Potts v. State*, No. 14-10-01172-CR, 2012 WL 1380230, at *1 (Tex. App.—Houston [14th Dist.] Apr. 19, 2012, no pet.) (mem. op., not designated for publication) (holding defendant did not establish prejudice where same judge who sentenced defendant also considered motion for new trial and determined additional testimony would not have influenced punishment assessment); *Arriaga v. State*, 335 S.W.3d 331, 337 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (concluding defendant did not establish prejudice where trial court could have

concluded new testimony alleged in motion for new trial would not have influenced its punishment assessment).

In other words, by denying appellant's motions for new trial, "the trial court rejected the idea that the punishment that it assessed would have been mitigated by" appellant's medical records. *Goody*, 433 S.W.3d at 81; *see also Smith*, 286 S.W.3d at 344 ("Only the trial judge in this case could have known what factors he took into consideration in assessing the original punishment, and only he would know how the defendant's testimony, if allowed, might have affected that assessment."); *Potts*, 2012 WL 1380230, at *1 ("It was well within the trial judge's discretion to determine that [character witness testimony] would not have influenced the judge's 'ultimate normative judgment' in assessing punishment . . . the trial judge simply determined the proffered testimony would not have affected his judgment.").

Accordingly, we hold that appellant has not established that he was prejudiced by his counsel's failure to discover and present his medical records to the trial court during his adjudication hearings and the trial court did not abuse its discretion in denying appellant's motions for new trial. *See Goody*, 433 S.W.3d at 81.

We overrule appellant's fifth issue.

## Exclusion of Evidence

In his first issue, appellant argues that the trial court violated his due process right to a "full opportunity to present punishment evidence" during the adjudication hearings because "it excluded relevant childhood mental health evidence."

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996). Where the trial court's evidentiary ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the reviewing court must uphold the trial court's ruling. *Id.* We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

In regard to punishment evidence, a defendant may offer anything that "the court deems relevant to sentencing." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2014); *see also Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999); *Henderson v. State*, 29 S.W.3d 616, 626 (Tex. App.— Houston [1st Dist.] 2000, pet. ref'd). Relevant evidence in this context is any evidence that assists the fact-finder in determining the appropriate sentence to give to a particular defendant in the circumstances presented, possibly including "the prior criminal record of the defendant, his general reputation, his character, an

opinion regarding his character, [and] the circumstances of the offense for which he is being tried." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *Rogers*, 991 S.W.2d at 265; *see also Garcia v. State*, 239 S.W.3d 862, 865 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("Relevance in [the punishment] context is more a matter of policy than an application of Rule of Evidence 401; it fundamentally consists of what would be helpful to the jury in determining appropriate punishment.").

Although article 37.07 allows a fact-finder to consider a wide range of evidence in determining the appropriate punishment for a defendant, such evidence must still satisfy Texas Rule of Evidence 403. *See Ellison v. State*, 201 S.W.3d 714, 718 (Tex. Crim. App. 2006) (noting article 37.07 allows "a jury to consider a wide range of evidence in determining" punishment); *Lamb v. State*, 186 S.W.3d 136, 143 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("Although a trial court possesses wide latitude in determining the admissibility of evidence presented at the punishment phase of trial, admitted evidence must satisfy Rule 403."); *Henderson*, 29 S.W.3d at 626 n.11 (admissibility of relevant punishment evidence subject to rule 403). In other words, "relevant evidence [that is] otherwise admissible under [a]rticle 37.07 is inadmissible if it fails to comport with Rule 403." *Lamb*, 186 S.W.3d at 144. Rule 403 provides that "evidence may be

14

excluded if its probative value is substantially outweighed by . . . considerations of undue delay, or needless presentation of cumulative evidence."

Appellant argues that the trial court erred in excluding his "mother's testimony on his mental health history" because his "mental health history, including his childhood mental health issues, was relevant to the judge's punishment decision."

The State objected to Watson's testimony about appellant's mental health during childhood as not relevant, and the trial court sustained the objection. Appellant's counsel then argued that such information "would be relevant to the Court in determining punishment," to which the court responded that it had "made [its] ruling." Subsequently, appellant's counsel made the following offer of proof.

> I would anticipate that this witness can provide testimony that can provide mitigating circumstances for [the trial court] in determining [appellant's] future punishment. . . . I would think that the Court would want that sort of information and it would be helpful to the Court in determining his future punishment.

We note that appellant, himself, testified at the adjudication hearings as to his mental health issues "when [he] was a kid," and he explained that he suffered from "ADHD, bipolar [disorder], and dyslexi[a]." He took "17 different medications" before the age of twelve, but stopped taking them because he "almost died" when his "heart almost exploded." Appellant also stated that he currently

15

suffers from depression for which he takes medication. And when he is on medication, he feels "a lot happier" and "do[esn't] want to hurt [himself]."

Further, although Watson was not allowed to go into specifics about appellant's mental health issues as a child, she did testify that appellant had suffered from mental health issues while he was "growing up." And Watson noted that appellant is "bipolar" and had been committed to "the psychiatric ward" for five days following the aggravated assaults. Moreover, she explained that while appellant is on medication, "[h]e's a happy person, smiles, upbeat, cheerful, just friendly, loving person, loves everybody, will do everything in the world for you." And she noted that when appellant is not on medications, "[i]t's like the devil's taken over."

Thus, the record reveals that appellant was able to present evidence about his mental health issues, including issues during his childhood, at the adjudication hearings. Although the trial court excluded Watson's testimony regarding any specifics of appellant's mental health issues as a child, the admission of similar evidence mitigates against any harm he might have suffered. *See Mosley v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998) (concluding admission of evidence similar to that excluded mitigated against possible harm). Accordingly, we hold that the trial court did not violate appellant's right to due process by excluding Watson's testimony about his childhood mental health issues.

We overrule appellant's first issue.

## Separate Punishment Hearing

In his second issue, appellant argues that the trial court violated his due process right to a "full opportunity to present relevant punishment evidence" because "it did not grant [him] a separate punishment hearing after adjudicating his guilt."

The Texas Code of Criminal Procedure provides that "[i]f community supervision is revoked after a hearing . . . , the judge may proceed to dispose of the case as if there had been no community supervision." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23(a) (Vernon Supp. 2014). Thus, when a trial court adjudicates a defendant's guilt after having deferred adjudication, the court must afford the defendant an opportunity to present punishment evidence. *See Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) ("After an adjudication of guilt, all proceedings, including assessment of punishment, . . . continue as if the adjudication of guilt had not been deferred.").

Although a defendant is entitled to present punishment evidence at a hearing following an adjudication of his guilt, it is a statutory right that can be waived. *See Vidaurri v. State*, 49 S.W.3d 880, 886 (Tex. Crim. App. 2001); *Lopez v. State*, 96 S.W.3d 406, 414 (Tex. App.—Austin 2002, pet. ref'd); *Foster v. State*, 80 S.W.3d

639, 641 (Tex. App.—Houston [1st Dist.] 2002, no pet.). To preserve error, a defendant is generally required to make a timely objection in the trial court. TEX. R. APP. P. 33.1. And, in order to successfully complain on appeal about the denial of the opportunity to present punishment evidence, a defendant must first make an objection in the trial court or, if there is no opportunity to object, timely file a motion for new trial. *See Vidaurri*, 49 S.W.3d at 886. If he files a motion for new trial, he should indicate with some specificity in the motion the evidence that he would have presented if the separate hearing had been provided. *See Salinas v. State*, 980 S.W.2d 520, 521 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

Here, appellant asserts that although he "did not have an opportunity to object to the trial court's failure to grant a separate punishment hearing," he "preserve[d] error through timely raising the objection in [his] motion[s] for new trial." However, appellant, in his motions for new trial, only argued that the trial court should have granted him new trials because it failed to give him a separate punishment hearing after adjudicating his guilt. Notably, appellant, in the motions, did not apprise the trial court of any additional evidence that appellant would have offered. *See Salinas*, 980 S.W.2d at 521; *see also Lopez*, 96 S.W.3d at 415 n.3 (although defendant, in his motion for new trial, "did complain of a lack of a separate punishment hearing," he "did not specify" the evidence he "would have presented"); *Hardeman v. State*, 981 S.W.2d 773, 775 (Tex. App.—Houston [14th

18

Dist.] 1998, pet. granted) ("[A]ppellant's motion for new trial only complained that the motion to adjudicate proceeding 'was invalid' because the trial court imposed punishment 'without conducting a separate hearing after the finding of guilt'. . . . Without having apprised the trial court of what additional evidence would have been offered, appellant has not preserved this complaint for appellate review."), *aff'd*, 1 S.W.3d 689 (Tex. Crim. App. 1999). Because appellant, in his motions for new trial did not inform the trial court of the evidence that he would have presented during separate punishment hearings, we hold that he has not preserved this issue for our review. *See* TEX. R. APP. P. 33.1.

We overrule appellant's second issue.

**Ineffective Assistance of Counsel During Misdemeanor Proceedings**

In his third issue, appellant argues that the trial court erred in denying his motions for new trial because his counsel, appointed to defend him in the county court at law in his misdemeanor criminal-trespass and resisting-arrest cases, provided him with ineffective assistance, rendering his pleas in the cases involuntary. Appellant asserts that "[t]he State should not have been able to benefit from [his] misguided [pleas] to criminal trespass and resisting arrest" by using those convictions as grounds to adjudicate his guilt in his aggravated assault cases." Appellant requests that we "reverse [his] misdemeanor convictions" and remand the instant cases for new adjudication and punishment hearings.

19

In order for this Court to review appellant's challenge to his convictions for the misdemeanor offenses of criminal trespass and resisting arrest on direct appeal, appellant was required to file notices of appeal of the convictions within thirty days after the sentences were imposed on January 24, 2013. *See* TEX. R. APP. P. 26.2(a)(1). Appellant did not file any notice of appeal from his January 24, 2013 misdemeanor convictions. Without a timely notice of appeal, we are without jurisdiction to address the merits of appellant's argument that his misdemeanor convictions should be reversed because he involuntarily entered his pleas due to ineffective assistance of counsel. *See Slaton v. State*, 981 S.W.2d 208, 210 (Tex. Crim. App. 1998); *Olivo v. State*, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996).

Moreover, we note that the trial court also adjudicated appellant's guilt in the instant cases on other grounds. It expressly found that appellant had violated the conditions of his community supervision by failing to perform community service, failing to enroll in a domestic violence and/or anger control program, failing to reimburse Galveston County for the attorney's fees of his appointed counsel, and failing to pay a community supervision fee, his Crime Stopper Program payments, and his court costs. And, proof of a single violation of his conditions of community supervision is sufficient to support the trial court's adjudication of his guilt. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st

Dist.] 2006, pet. ref'd).  Here, appellant has not challenged any of the other

grounds supporting the trial court's adjudication of his guilt of the instant offense.

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court in each cause.[4]


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Do not publish.   TEX. R. APP. P. 47.2(b).

---

[4]     In his fourth issue, appellant contends that the Galveston County Court at Law No. 3 erred in denying the petitions for writs of habeas corpus that he filed there, challenging his convictions for the offenses of criminal trespass and resisting arrest.   Appellant has separately appealed the county court's denials of his applications for writs of habeas corpus, and we address appellant's challenges in a separate opinion. *See Glenn v. State*, 01-14-00042-CR & 01-14-00195-CR (Tex. App.—Houston [1st Dist.] Feb. 26, 2015, no pet. h.) (mem. op.).



APPENDIX C



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-01079-CR

————————————

**LENIN SALDADO LOPEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 228th District Court
Harris County, Texas
Trial Court Case No. 1403196

## O P I N I O N

Lenin Saldado Lopez pleaded guilty to aggravated robbery without a recommended sentence. Following a presentence investigation, the trial court sentenced Lopez to 30 years' confinement. Lopez filed a motion for new trial,

arguing that his trial attorney provided ineffective assistance of counsel. The motion was denied.

In one issue, Lopez argues that his attorney provided ineffective assistance during the punishment phase of his trial and the trial court, therefore, erred in denying his motion for new trial. Specifically, Lopez alleges that his attorney failed to investigate his background or gather and present mitigating evidence at the sentencing hearing and, instead, left it to Lopez—who is alleged to be "significantly developmentally disabled [with] various mental health problems"— to prepare for the sentencing hearing unassisted.

Because we conclude that the attorney was deficient and that Lopez established prejudice as a result of the ineffective assistance, we reverse the trial court's order and remand for a new sentencing hearing.

## Background

Lopez was indicted on the felony offense of aggravated robbery. He was alleged to have injured an individual while he and another man robbed him at gunpoint. When Lopez and the other man were arrested, they had two robbery victims' wallets and clothing items in their possession, as well as a large sum of cash.

Lopez hired an attorney to represent him. During plea negotiations, the State offered a plea deal that included a 15-year sentence, which was the minimum

2

applicable sentence. Lopez rejected the offer. On the day of trial, his attorney filed a motion to withdraw. Counsel stated that "[g]ood cause exists for withdrawal [because counsel] is unable to effectively communicate with Lenin Lopez so as to be able to adequately represent" him and that Lopez "has failed to comply with the terms of the employment agreement [because he] has failed and refused to pay for legal services per the terms of his contract."

Counsel simultaneously filed a motion for continuance, stating that he needed to complete trial preparations, which had been delayed due to his handling of another case. Counsel again stated that he had not been fully paid. The motion for continuance also asserted that "the Court's records indicate that the Defendant has retained other counsel, so [the attorney moving for a continuance] has not prepared for trial." The motion does not identify where in the record there is an indication of dual representation. Nor do we find one.

There are no orders in the record granting or denying these two motions. Instead, the record reveals that—on the same day the motions were filed and Lopez was scheduled for trial—he pleaded guilty without a sentencing recommendation. The trial court accepted the guilty plea, ordered a presentence investigation (PSI), and scheduled a sentencing hearing to occur two months later.

On the same day as the withdrawal motion and the guilty plea, Lopez's attorney sent him a letter telling him to accumulate mitigation evidence. He told

3

Lopez to collect "'good guy' letters" and to give them directly to the probation department when he was interviewed as part of the presentence investigation; to meet with counsel on the day of the sentencing hearing 15 minutes before it was scheduled to begin; and to bring to the hearing people "to support you." The letter also asked that Lopez "get current" on his fee payments.

The only letter Lopez gave the PSI investigator was from his girlfriend. She focused her comments on her belief that Lopez was innocent. Her letter did not focus on the issue actually before the trial court, which was the appropriate sentence to be imposed, given that Lopez had already admitted guilt.

Lopez's counsel did not appear at the pre-scheduled sentencing hearing. The hearing was reset for a couple of days later. Again, he did not appear. Without an attorney there to counsel him, Lopez indicated to the court that he wanted to "back out" of his plea. Lopez's bond was immediately revoked, and he was taken into custody to await sentencing. The trial court indicated that he viewed Lopez, at that point, as a "flight risk." Lopez remained in custody until the sentencing hearing was eventually held. His plea was not changed.

At the sentencing hearing, trial counsel presented Lopez's defense in a single sentence:

> Your Honor, my client has instructed me to advise the Court that whatever sentence is given, he would want it to be the absolute minimum because he believes he's going to be a great role model for

4

both his son and his wife and the community at large. And other than the statement from Mr. Lopez, that's all I have.

Counsel informed the court, "Your Honor, there's no evidence that's being offered today, no deletions, additions, objections, et cetera to the PSI." Thus, no mitigation evidence was presented to the court outside of what had been provided to the PSI investigator.

At the hearing, the State directed the Court to a written statement from the victim, describing the panic and fear he continues to feel as a result of Lopez robbing and beating him with a gun. The victim requested that Lopez receive the maximum available sentence so that he could not rob again or "kill innocent people."

Without either side offering any other aggravating or mitigating evidence, the State requested a sentence between 30 and 35 years. The trial court sentenced Lopez to 30 years. After sentencing, his trial counsel successfully withdrew his representation.

Lopez was appointed new counsel, who filed a motion for new trial. Lopez argued that his trial counsel had provided ineffective assistance of counsel, which caused his guilty plea to be involuntarily made and his presentation of mitigating evidence deficient. Specifically, he contended that his counsel failed to present mitigating evidence of Lopez's past mental-health issues.

5

Trial counsel did not testify at the new-trial hearing. Instead, his affidavit was admitted into evidence. The affidavit stated that the attorney was unaware of Lopez's having any mental health issues.

Lopez presented additional mitigation evidence at the new-trial hearing. This evidence included affidavits from two individuals who averred that Lopez's trial counsel never contacted them about testifying on his behalf at the sentencing hearing, from his girlfriend who stated that trial counsel did not assist in preparations for the sentencing hearing, and from his mother who stated that trial counsel never returned her phone calls. Additionally, the trial court admitted into evidence the letter from Lopez's attorney telling him to gather mitigating evidence and to submit it directly to the PSI investigator.

Lopez also presented the trial court with two written reports. The first was a "synopsis of psychosocial interview" conducted by a psychosocial worker in the Harris County Public Defender's Office after he retained new counsel. The second was an earlier "psychological screening" signed by a Harris County-affiliated psychologist. Lopez argued that his trial counsel should have incorporated the mental-health information into his mitigation defense at the sentencing hearing.

The trial court denied Lopez's new-trial motion. On appeal, Lopez contends that the trial court erred by denying his motion but, in doing so, he limits his

argument to the assertion that trial counsel was deficient during the punishment phase of his trial.

## Standards of Review

To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) his counsel's performance was deficient and (2) a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Andrews*, 159 S.W.3d at 102. The defendant has the burden to establish both prongs by a preponderance of the evidence; failure to make either showing defeats an ineffectiveness claim. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Allegations of ineffective assistance of counsel must be firmly rooted in the record. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Escobar v. State*, 227 S.W.3d 123, 127 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). We do not limit our review to a single portion of the representation; instead, we look to the totality of the representation to determine the effectiveness of counsel. *Strickland*, 466 U.S. at 688–89, 695, 104 S. Ct. 2065, 2069; *Thompson v. State*, 9

S.W.3d 808, 813 (Tex. Crim. App. 1999); *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). In viewing counsel's performance, we indulge a strong presumption that his performance falls within the wide range of reasonable professional assistance or trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. 2065; *Thompson*, 9 S.W.3d at 813. We will conclude that counsel was deficient only if "the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews*, 159 S.W.3d at 101. If the record is silent as to counsel's strategy, the presumption of effectiveness is sufficient to deny relief. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

Given that Lopez raised his ineffective assistance claim in a motion for new trial, we analyze the issue on appeal as a challenge to the trial court's denial of his new-trial motion and review it under an abuse-of-discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004); *Starz v. State*, 309 S.W.3d 110, 118 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Thus, we reverse only if the trial court's decision to deny the motion for new trial was arbitrary or unreasonable, viewing the evidence in the light most favorable to the trial court's ruling. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Starz*, 309 S.W.3d at 118. A decision is arbitrary or unreasonable if no reasonable view of the record could support the trial court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Charles*, 146 S.W.3d at 208.

### *Strickland* First Prong

To satisfy the first prong of the *Strickland* test to establish ineffective assistance of counsel, Lopez had the burden to demonstrate that his attorney's professional services fell below an objectively reasonable standard. *Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064.

**A.     Counsel's duty to actively represent his client**

Criminal defendants have a constitutional right to counsel. *Strickland*, 466 U.S. at 684, 104 S. Ct. at 2063; U.S. CONST. amend. VI. This requires more than the physical presence of an attorney at the proceeding:

> That a person who happens to be a lawyer is present at trial alongside the accused . . . is not enough . . . . [T]he right to the assistance of counsel . . . envisions counsel[] playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

*Strickland*, 466 U.S. at 685, 104 S. Ct. at 2063.

Counsel is expected to use his professional judgment to prepare for trial and to advise his client. *Id.* at 680–81; 104 S. Ct. at 2060–61. An "attorney who represents a criminal defendant is 'bound by professional duty to present all available evidence and arguments in support of (the client's) positions and to contest with vigor all adverse evidence and views.'" *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 787,

9

93 S. Ct. 1756, 1762 (1973); *Wenzy v. State*, 855 S.W.2d 47, 50 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).

Unless a motion to withdraw has been granted, a criminal defense attorney has a continuing duty to represent his client to the fullest of his ability. *See Wenzy*, 855 S.W.2d at 50; TEX. DISCIPLINARY R. PROF. CONDUCT 1.15(c) (1990).

**B.      Counsel's duty to investigate and evaluate mitigation evidence**

"The decision whether to present witnesses is largely a matter of trial strategy." *Lair v. State*, 265 S.W.3d 580, 594 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). We defer to trial court's determination of trial strategy and his choice of witnesses so long as any conceivable strategy can be imagined for the actions taken or not taken. *Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003).

But "counsel can only make a reasonable decision to forgo presentation of mitigating evidence after evaluating available testimony and determining it would not be helpful." *Lair*, 265 S.W.3d at 595. Thus, "[c]ounsel is ineffective when he fails to investigate and interview potential punishment witnesses, despite their availability and willingness to testify on appellant's behalf . . . ." *Id.*; *Wiggins v. Smith*, 539 U.S. 510, 521–24, 123 S. Ct. 2527, 2535–36 (2003). Counsel's failure to uncover and present mitigating evidence "cannot be justified as a tactical decision when defense counsel has not conducted a thorough investigation of the

10

defendant's background." *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd) ("Defense counsel's failure to investigate and call *any* punishment witnesses amounts to deficient performance." (emphasis added)); *see also Wiggins*, 539 U.S. at 527–28, 123 S. Ct. at 2538 (noting that trial counsel's discovery of some favorable mitigating evidence may require counsel, as part of provision of reasonable professional services, to investigate further for additional mitigating evidence).

## C. The evidence concerning counsel's investigation and presentation of mitigation evidence

Lopez's motion for new trial alleged that trial counsel failed to present mitigating evidence at the sentencing hearing. Lopez attached a report to his motion that indicated a history of mental health issues. At the hearing, Lopez introduced into evidence an affidavit from his trial counsel responding to the allegation. Counsel stated, "I am unaware of Mr. Lopez having any mental health issues or history."

The new-trial motion complained of other areas of mitigation evidence being omitted as well. Lopez contended that counsel was deficient by failing to inform the trial court that he "has been affected by tragedy and instability during his childhood and has people who know him to be a good person." Lopez attached to the motion an affidavit from his girlfriend, stating that trial counsel "never did anything to prepare for the PSI" and "never asked us any questions about [his]

11

background." She averred that trial counsel "never wanted to see any of the letters from friends of the family," which he previously told them to send directly to the probation officer. She stated that the letters were sent "without any help from the lawyer." She further stated, "We owed him money so he never did any work on the case and would not even meet with us at his office."[1]  Trial counsel's affidavit did not respond to these allegations.

The trial court admitted additional evidence at the hearing that had not been included with the new-trial motion. This included letters from two people stating that they had not been contacted by trial counsel before the sentencing hearing and that, had they been contacted, they would have been willing to testify positively about Lopez. There was an additional affidavit from Lopez's mother stating that trial counsel "would not return our calls," she and counsel had never spoken, and she was unable to attend the sentencing hearing because of recent surgery.  The final piece of evidence admitted at the new-trial hearing was the letter from trial counsel to Lopez written the day he pleaded guilty, instructing him to collect "'good guy' letters," deliver the letters directly to the probation officer, and bring people to the sentencing hearing who "support" him.

---

[1]     Also attached to the motion were two letters that Lopez alleges he and his girlfriend unsuccessfully attempted to have included in the PSI. The final attachment was the partially redacted psychological screening report from several years earlier.

None of this evidence, other than the mental health report and the girlfriend's affidavit, was presented to the trial court until the new-trial hearing, meaning that it was submitted after the trial attorney prepared his affidavit. As a result, counsel's affidavit does not respond to these assertions. Likewise, because trial counsel did not testify at the new-trial hearing, the trial court did not receive any evidence directly responsive to the affidavits. Nonetheless, the record is not devoid of evidence concerning counsel's preparation for the sentencing hearing.

Counsel's letter to Lopez, sent after counsel had unsuccessfully attempted to withdraw his representation and Lopez had pleaded guilty, instructed Lopez to collect supportive letters, give them directly to the PSI investigator for inclusion in the PSI report, and meet counsel at the sentencing hearing. He gave no indication that he was willing to assist with interviewing potential witnesses or reviewing their statements before they were submitted.

The reasonable inferences from counsel's letter are that counsel had assigned to Lopez the task of identifying and contacting potential character witnesses and determining what should, and should not, be included in their character-reference letters—without any assistance from counsel—and that counsel's next involvement in the case would not be until the hearing. *Cf. Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007) (noting that "an inference is a conclusion reached by considering other facts and deducing a logical

consequence from them" while speculation "is mere theorizing or guessing about the possible meaning of facts and evidence presented."). This inference is further supported by the affidavits from Lopez, his girlfriend, and mother, as well as by the letters from acquaintances of Lopez who were never contacted by counsel.

The delegation of the important task of developing mitigation evidence was inconsistent with trial counsel's professional obligation to conduct a reasonable investigation into his client's background and to evaluate whether the information discovered would be helpful in mitigating against the State's evidence on punishment. *See Williams v. Taylor*, 529 U.S. 362, 396, 120 S. Ct. 1495, 1514–15 (2000); *Rivera v. State*, 123 S.W.3d 21, 31 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also Wenzy*, 855 S.W.2d at 50; TEX. DISCIPLINARY R. PROF. CONDUCT 1.15(c) (1990).

Further, the PSI report was provided to trial counsel at least 10 days before the sentencing hearing, and it indicated that Lopez had a below-normal IQ and mental-health diagnoses. That information should have raised an issue for counsel whether additional investigation was necessary to uncover more mitigating evidence. *Wiggins*, 539 U.S. at 527–28, 123 S. Ct. at 2538. At a minimum, it should have raised the issue of whether Lopez was capable of effectively evaluating the mitigation evidence available to him without attorney assistance. As the United States Supreme Court stated in *Atkins v. Virginia*, 536 U.S. 304, 320–

14

21, 122 S. Ct. 2242, 2252 (2002), severely mentally deficient defendants "may be less able to give meaningful assistance to their counsel and are typically poor witnesses, and their demeanor may create an unwarranted impression of lack of remorse for their crimes."

Moreover, by telling Lopez to bring supporters directly to the hearing just 15 minutes before it was to begin, it is evident that counsel would not have had sufficient time to interview and prepare these witnesses not only for direct examination but also for cross-examination. And, without that information, he would not have had the information necessary to determine whether, on balance, Lopez's defense would be aided by each witness.[2] *See Wiggins*, 539 U.S. at 527–28, 536, 123 S. Ct. 2538, 2543; *Lair*, 265 S.W.3d at 595 ("[C]ounsel can only make a reasonable decision to forgo presentation of mitigating evidence after evaluating available testimony and determining it would not be helpful.").

Even absent direct testimony from trial counsel regarding his strategy in preparation for the sentencing hearing or strategy during the hearing, we conclude that the only reasonable inference from the evidence presented to the trial court,

---

[2]  It is not even clear that Lopez could have reasonably understood his counsel's letter to state that he should bring potential witnesses to the hearing to testify on his behalf. The letter states only that Lopez should bring people "to support" him. Lopez reasonably could have understood the letter to suggest that he bring people to observe the proceeding and offer him non-participatory, emotional support—an action that would not have added to his mitigation defense.

15

including counsel's own letter to his client, is that counsel did not participate in collecting mitigation evidence, did not review the mitigating evidence his client collected without his assistance, and did not present any mitigation evidence on his client's behalf at the hearing. The evidence, thus, rebuts the presumption of effectiveness of counsel, *Strickland*, 466 U.S. at 689, 104 S. Ct. 2065, and demonstrates that counsel failed to perform as a reasonably competent attorney. *Andrews*, 159 S.W.3d at 101.

Accordingly, we conclude that counsel's performance fell below an objective standard of reasonableness and, as a result, the first prong of the *Strickland* test was met in support of Lopez's new-trial motion.

### *Strickland* Second Prong

In addition to demonstrating that his attorney's services fell below an objectively reasonable standard, Lopez also had to establish that defense counsel's deficient performance prejudiced him. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Rivera*, 123 S.W.3d at 32. This is the second prong of the *Strickland* test. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

For the punishment phase, our inquiry is whether there is a reasonable probability that the assessment of punishment would have been less severe in the absence of defense counsel's deficient performance. *Wiggins*, 539 U.S at 534, 123 S. Ct. at 2542; *Lair*, 265 S.W.3d at 595. Prejudice is established if the probability

16

that the outcome would have been different is "sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Andrews*, 159 S.W.3d at 102. Our "ultimate focus" is whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069.

As this Court has previously noted, "[t]he sentencing process consists of weighing mitigating and aggravating factors, and making adjustments in the severity of the sentence consistent with this calculus." *Shanklin*, 190 S.W.3d at 165. Thus, the adversarial process is hindered if the factfinder is denied access to powerful mitigating evidence, leaving only the aggravating factors for its consideration. *See Williams*, 529 U.S. at 395–99, 120 S. Ct. at 1514–16 (holding that defendant was prejudiced by counsel's ineffectiveness in not investigating or presenting mitigating evidence, including "nightmarish" childhood, repeated past sexual assaults during his youth, extremely low IQ, and several positive character references from professionals in community who had witnessed defendant excel in structured environments).

When defense counsel presents "no evidence of mitigating factors . . . to balance against the aggravating factors presented by the State" and fails to do so because he did not investigate mitigating factors or contact potential mitigation

17

witnesses, there is prejudice. *Shanklin*, 190 S.W.3d at 165. Prejudice exists, in that context, because there is not even a possibility of the factfinder considering mitigating evidence. *See id.* at 165–66 ("We conclude that appellant has demonstrated prejudice in this case . . . . [D]efense counsel's failure to interview or call a single witness, other than appellant, deprived him of the possibility of bringing out even a single mitigating factor."); *Lair*, 265 S.W.3d at 595–96.

Here, trial counsel presented no mitigating evidence, not even Lopez himself. Two people averred that they would have testified favorably for Lopez had they been contacted by counsel, but they were never contacted. Even though the PSI report contained information indicating that Lopez had a troubled background, including intellectual deficiencies that impacted his general intelligence, school performance, and decision-making, counsel failed to highlight even one piece of this information to the trial court.[3] *See Williams*, 529 U.S. at 395–99, 120 S. Ct. at 1514–16; *Wiggins*, 539 U.S. at 534, 123 S. Ct. at 2542.

The only "evidence" counsel offered at the sentencing hearing was his one-sentence statement to the trial court that his client wanted the court to know that he considered himself to be a good role model. This statement was made in an evidentiary vacuum: counsel provided absolutely no evidence to support Lopez's

---

[3] In fact, based on his affidavit that he was unaware of any mental-health issues, Lopez raises the issue whether counsel had read the PSI report before the sentencing hearing.

belief that he could be a good role model. He failed to offer examples of past good deeds, positive interactions, supportive friends or family, or any other mitigating evidence. *See Wiggins*, 539 U.S. at 536–38, 123 S. Ct. at 2543–44 (concluding that defendant was prejudiced by counsel's failure to present any of large amount of available mitigating evidence to counter obvious aggravating factors, including violent nature of charged offense and defendant's lengthy criminal history). Without any context or basis for counsel's statement, it was little more than empty rhetoric.

Had trial counsel investigated and brought mitigating factors to the trial court's attention, that information would have been weighed against the aggravating factors in the case, which were significant, including the violence that was used to commit the robbery, indications that Lopez had been involved in other, recent robberies, and a criminal history that included drug possession, a separate theft conviction, a trespass conviction, and a previous aggravated robbery that resulted in a three-year sentence. Instead there was nothing to weigh against the strong aggravating factors.

By neither investigating nor presenting evidence for the trial court to consider in assessing punishment, trial counsel deprived Lopez of even a possibility of developing a mitigating defense. Thus, prejudice is established. *See Shanklin*, 190 S.W.3d at 165–66 ("We conclude that appellant has demonstrated

19

prejudice in this case, even though we cannot say for certain that appellant's character witnesses would have favorably influenced the jury's assessment of punishment. We have no doubt, however, that defense counsel's failure to interview or call a single witness, other than appellant, deprived him of the possibility of bringing out even a single mitigating factor." (internal citations omitted)).

We therefore conclude that the trial court erred in denying Lopez's motion for new trial on punishment and sustain Lopez's sole issue on this appeal.

## Conclusion

We have concluded that Lopez's counsel was deficient and that the deficiency prejudiced Lopez during sentencing. Accordingly, we reverse the trial court's order denying Lopez's new-trial motion and remand the cause for a new punishment hearing pursuant to article 44.29(b) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (West 2013); *Lair*, 265 S.W.3d at 596 (remanding for new punishment hearing). Because Lopez's appeal was limited to the issue of punishment, we have not reviewed the trial court's determination of guilt. That portion of the trial court's judgment has not been challenged and remains unchanged.

Harvey Brown
Justice

20

Panel consists of Justices Keyes, Higley, and Brown.

Publish. TEX. R. APP. P. 47.2(b).